UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA,     :

                                          :       **ECF FILING**

                                          :

         - against -                :       07 Cr. 537 (WHP)

                                          :

                                          :

DAVID CARMEL                    :

                   Defendant     :
-------------------------------------------------------X

MEMORANDUM OF LAW
IN SUPPORT OF MOTIONS TO SUPPRESS
A STATEMENT, PHYSICAL EVIDENCE, AND FOR
DISCLOSURE OF EXCULPATORY MATERIAL

Dated: New York, New York        DONALD YANNELLA, P.C.
       May 10, 2008              Attorney for Defendant
                                    DAVID CARMEL
                                    7 Dey Street, Suite 803
                                    New York, NY  10007
                                    (212) 226-2883

TABLE OF CONTENTS

STATEMENT OF FACTS                                                                 3

  A.  THE INDICTMENT                                                      3

  B.  BACKGROUND                                                           3

POINT 1:  MR. CARMEL'S POST-ARREST STATEMENT               7
SHOULD BE SUPPRESSED                                                         7

  LEGAL STANDARD:                                                         7

  ANALYSIS                                                                     9

POINT 2:  PHYSICAL EVIDENCE SEIZED PURSUANT TO THE
STATE AND FEDERAL WARRANTS SHOULD BE SUPPRESSED     11

  LEGAL STANDARD                                                          11

  ANALYSIS OF STATE COURT WARRANT                            13

  ANALYSIS OF FEDERAL SEARCH WARRANT                      17

POINT 3.  THE GOVERNMENT SHOULD BE ORDERED                23
TO PROVIDE BRADY AND GIGLIO MATERIAL                          23

  LEGAL STANDARD                                                          23

  ANALYSIS:                                                                    24

CONCLUSION                                                                          27

**STATEMENT OF FACTS**

**A.  THE INDICTMENT**

The indictment charges violations of 18 USC §§ 641 and 2, which make it a crime to embezzle, steal, purloin, or knowingly convert any thing of value to the United States or any department thereof.

Specifically, the indictment alleges "CARMEL sold to an undercover law enforcement agent [four] AN/PEQ-2A weapons mounted infrared laser-aiming light source ("PEQ"), which he had previously stolen from the United States Department of Defense."  Count 1 charges sale of one stolen PEQ in May 2006; Count 2 charges sale of one stolen PEQ in June 2006, and Count 3 charges sale of two stolen PEQs in February 2007.  It is alleged that the value of the property stolen exceeded one thousand ($1,000) dollars.

**B.  BACKGROUND**

After 13 years of service in the United States Navy, Mr. Carmel was honorably discharged on November 30, 2005.

Mr. Carmel had been an avid collector of military items since the age of 15.  After leaving the navy, he returned to live with his parents in Gilman, Wisconsin, and he continued to purchase, sell, and collect military items. Mr. Carmel kept a massive and varied collection of military items at his

home in Wisconsin. Many of the objects were antique and vintage collectibles from World Wars I and II. He generally was not secretive about his passion, and he even parked a British tank on his parents' front lawn.

In 2006, federal agents opened an investigation of Mr. Carmel. The investigation involved an individual who sold items on eBay with a user name of "theoldeman." That account was registered with eBay in the name of David Carmel's father. ICE agent Kai Wah Chan, acting in an undercover capacity with the alias "Tony," contacted "theoldeman" on eBay and inquired about purchasing weapons parts. One of Mr. Carmel's parents referred "Tony" to speak to their son, David Carmel.

Evidence of the sales of the four PEQs consists of recorded telephone conversations, e-mails, US Postal money orders sent by ICE to David Carmel at his home in Gilman, Wisconsin, and ICE's receipt of four PEQs at their undercover address in New York City with David Carmel's return address.

There is no law against possessing or selling PEQs. According to the US Attorney's Office, PEQs are manufactured by Insight Technologies for both the military and civilian law enforcement agencies. According to Insight Technology's website (www.insightlights.com), the "AN/PEQ-2A is a dual beam multi-function weapon mounted IR Aiming Laser and

4

Illuminator. This battle-tested device provides NVG-equipped operators a tremendous advantage in lowlight confrontations." The website states: "Over 100,000 Produced for the U.S. Military" and reports that the AN/PEQ2A is "battle tested in Iraq and Afghanistan." The website reports that the AN/PEQ2A mounts to "all U.S. Military Standard Direct Fire Weapons." Other information readily available on the internet explains that the AN/PEQ2A is simply a laser used in conjunction with night vision goggles to illuminate a target with infrared light, instead of a flash of white light, in order to identify and/or locate a target.

The four PEQ sales in this case are alleged to violate federal law under the theory that Mr. Carmel stole them from the US Navy. However, there is no proof that those PEQs were stolen from the US Navy by David Carmel or by anybody else.

On May 21, 2007, an arrest warrant for David Carmel was obtained in the Southern District of New York charging violations of 18 USC § 641.

On May 30, 2007, federal agents went to Gilman, Wisconsin, to arrest David Carmel at a Leinenkugel's Brewery, where the undercover ICE agent had arranged a meeting. At 2:30 PM, Mr. Carmel was arrested during an automobile stop with the assistance of the Chippewa Falls Sheriff's office.

He was transported to the Sheriff's office and arrested on the warrant from the Southern District of New York.

On May 30, 2007, a Chippewa County Court Commissioner signed a state court warrant authorizing a search of the Carmel residence. The warrant authorized a search for three alleged machine guns, as well as "any machine gun parts or any items capable of use to modify a weapon into a machine gun."

While still executing the state court warrant, agents obtained a federal search warrant on May 31, 2007 from the United States District Court for the Western District of Michigan.

On June 7, 2007, Carmel was indicted in the Western District of Michigan for the crime of failing to register and pay taxes on 60 machine guns that he possessed. On September 18, 2007, Carmel entered a conditional guilty plea to the indictment, reserving the right to challenge on appeal the court's denial of his motions to dismiss the indictment (arguing essentially that it violates due process to prosecute for failure to pay tax on illegal items for which the United States would not accept tax payments) and to suppress physical evidence (the machine guns). On November 27, 2007, the district court sentenced Mr. Carmel to 46 months' imprisonment. His

appeal is currently pending in the United States Court of Appeals, Seventh Circuit.

## POINT 1:  MR. CARMEL'S POST-ARREST STATEMENT SHOULD BE SUPPRESSED

### LEGAL STANDARD:

The Government has the burden of proving by a preponderance of the evidence that the statement was made after a voluntary, knowing and intelligent waiver of the rights enunciated in Miranda. Colorado v. Connelly, 479 U.S. 157, 168 (1986); United States v. Gaines, 295 F.3d 293, 297 (2d Cir. 2002).  For a waiver to be "voluntary," the waiver must have been "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986).  Resolution of this issue requires inquiry into "the totality of all the surrounding circumstances," id., including a defendant's background and experience, the conditions of the interrogation and the conduct of the officers. See United States v. Burrous, 147 F.3d 111, 116 (2d Cir. 1998).  The law presumes that a defendant did not waive his rights. North Carolina v. Butler, 441 U.S. 369 (1979).

For a waiver to be made "knowingly and intelligently," a defendant must have "a full awareness of both the nature of the right being abandoned

and the consequences of the decision to abandon it." Moran, 475 U.S. at 421.
In order to meet this test, the accused needs to be made aware that "he may
choose not to talk to law enforcement officers, to talk only with counsel
present, or to discontinue talking at any time." Id.; accord Oregon v. Elstad,
470 U.S. 298, 316 (1985).

For the Miranda advice-of-rights to be triggered, the defendant must
be subjected to "custodial interrogation." Ilinois v. Perkins, 496 U.S. 292,
296 (1990).

Where initial statements are elicited from a defendant in violation
Miranda v. Arizona, 384 U.S. 436 (1966), subsequent statements elicited
after compliance with Miranda may be suppressed as "fruit of the poisonous
tree." Wong Sun v. United States, 371 U.S. 471 (1963).   However,
suppression of the post-Miranda statement is not required in all cases.
Oregon v. Elstad, 470 U.S. 298, 318 (1985).  In Brown v. Illinois, 422 U.S.
590, 603 (1975), the Supreme Court set forth three factors to consider in
determining whether the causal chain has been sufficiently attenuated: (1)
the time elapsed between the illegality and the acquisition of the evidence;
(2) the presence of intervening circumstances; and (3) the "purpose and
flagrancy of the official misconduct."

A defendant challenging the voluntariness of a statement has the right to "a fair hearing and a reliable determination on the issue of voluntariness." Jackson v. Denno, 378 U.S. 368, 377 (1964); see also 18 USC § 3501 (a) (when a confession is offered, "the trial judge shall, outside the presence of the jury, determine any issue as to voluntariness").  A statement may be considered involuntary where it is coerced by improperly taking advantage of a defendant's weakened physical condition.  Mincey v. Arizona, 437 U.S. 385, 401-02 (1978); United States v. Khalil, 214 F3d 111, 121 (2d Cir. 2000); Pagan v. Keane, 984 F.2d 61, 63 (2d Cir. 1993).

When a suspect invokes the right to counsel, the suspect "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police."  Edwards v. Arizona, 451 US 477, 484-85 (1981).

**ANALYSIS**

Once the Mr. Carmel's vehicle was stopped by the Chippewa County Sheriff's Office, federal agents converged on the scene pointing firearms at Mr. Carmel.  Mr. Carmel was handcuffed and placed in the back of a law enforcement vehicle.  There is no question that he was in custody for

<u>Miranda</u> purposes.  Mr. Carmel was advised of <u>Miranda</u> rights in the vehicle, and he promptly advised the state and federal agents that he wished to remain silent and that he wanted an attorney.

Mr. Carmel was transported to the Chippewa County Sheriff's Office and placed in a room with federal agents.  Mr. Carmel was advised of his <u>Miranda</u> rights, and he again invoked his right to remain silent and asked for an attorney.  A federal law enforcement advised Mr. Carmel to sign the <u>Miranda</u> form, saying it was merely an acknowledgement of having been advised of rights, not a waiver.  For the next several hours, Mr. Carmel periodically asked for an attorney, but the interrogation continued.  (See Mr. Carmel's affidavit, attached to Motion papers as Exhibit E).

Mr. Carmel was denied access to a lawyer and denied access to medication prescribed to him by his psychiatrist.  One medication was Effexor XR® (venlafaxine HCI), which, according to its manufacturer, "is a prescription medication approved for the treatment of major depressive disorder (MDD), generalized anxiety disorder (GAD), social anxiety disorder (SAD), and panic disorder (PD) in adult patients."  The other medication was WELLBUTRIN XL, which, according to its manufacturer, is used to treat depression.

Once Mr. Carmel asked for counsel, all questioning should have ceased until he was given an opportunity to consult with an attorney. Mr. Carmel's statements should be suppressed because they were involuntary and taken in violation of his rights to remain silent and to counsel, under the Fifth and Sixth Amendments to the United States Constitution.

**POINT 2: PHYSICAL EVIDENCE SEIZED PURSUANT TO THE STATE AND FEDERAL WARRANTS SHOULD BE SUPPRESSED**

**LEGAL STANDARD**

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause." Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In order to obtain a warrant for the search of a residence, the Government must show probable cause to believe not only that a crime was committed, but also that evidence of such crime is located at the residence. United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983); Lauro v. Charles, 219 F.3d 202, 211 (2d Cir. 2000) (describing "particular gravity the Fourth Amendment accords to government intrusions" on privacy of the home).

A defendant seeking to suppress evidence that was gathered pursuant to a search warrant that was based on inaccurate representations by the Government must show (1) that the inaccuracies were the product of a Government agent's "deliberate falsehood" or "reckless disregard for the truth" rather than innocent mistake, and (2) that, after setting aside the falsehoods, what remains of the warrant affidavit is insufficient to support a finding of probable cause. Franks v. Delaware, 438 U.S. 154, 171-72 (1978); United States v. Canfield, 212 F.3d 713, 717-18 (2d Cir. 2000). False statements include material omissions that render an affidavit misleading. United States v. Ferguson, 758 F.2d 843, 848 (2d Cir. 1985).

With respect to staleness, there is no "arbitrary 'cut-off' expressed in days or weeks beyond which probable cause ceases to exist." United States v. Beltempo, 675 F.2d 472, 478 (2d Cir. 1982); United States v. Wagner, 989 F.2d 69, 75 (2d Cir. 1993). Rather, staleness challenges should be resolved through a flexible, commonsense inquiry into whether probable cause existed at the time the warrant issued. Beltempo, 675 F.2d at 478. In conducting this inquiry, the Court must consider the amount of time that has passed, the kind of property sought, and the nature of the underlying criminal activity. United States v. Singh, 390 F.3d 168, 181-82 (2d Cir. 2004).

If officers executing a warrant (1) engage in a wide-ranging seizure of materials outside the scope of the warrant and (2) do so in bad faith, suppression of all of the evidence is justified. United States v. Shi Yan Liu, 239 F.3d 138, 140 (2d Cir. 2000).

A warrant must have entered "on its face the exact date and time it is executed." Fed. R. Crim. P. 41 (f)(1).  A warrant must also be returned to the court after it is executed. See Fed. R. Crim. P. 4 (c) (4), 9 (c) and 41 (f)(4). The magistrate judge, in turn, must forward the warrant, copies of the return and the inventory of property taken, and related papers to the clerk of the court. Fed. R. Crim. P. 41 (i).  A written inventory of property taken, and a copy of the warrant must accompany the return and a receipt for the property seized must be left at the search location. Fed. R. Crim. P. 41 (f) (2) and (3). A failure to comply with all the details of Rule 41 will result in suppression in cases of intentional and deliberate disregard of the rule. United States v. Burke, 517 F.2d 377, 386 (2d Cir 1975).

**ANALYSIS OF STATE COURT WARRANT**

Mr. Carmel does not seek suppression of the four PEQs that are the subject of the indictment because they were sent to an undercover address maintained by ICE in New York City and were not the subject of an illegal

search and seizure.  Instead, this motion seeks suppression of at least a truck load of military weapons and collectibles, including a PEQ or PEQ component parts, that law enforcement agents seized from Mr. Carmel's home, some of which the Government will offer in evidence.  That evidence was seized pursuant to two search warrants:  a Wisconsin state court warrant issued on May 30, 2007 and a federal warrant issued in the Western District of Wisconsin on May 31, 2007.  Mr. Carmel's motion to suppress physical evidence was denied in the Western District of Wisconsin and is currently pending appeal in the United States Court of Appeals, Seventh Circuit.

On May 30, 2007, a Chippewa County Court Commissioner signed a state court warrant authorizing the search of the Carmel residence for three alleged machine guns, as well as "any machine gun parts or any items capable of use to modify a weapon into a machine gun."

The probable cause statement says that an undercover agent set up a meeting with David Carmel to further an investigation "involving the theft, sale and diversion of stolen military supplies including weapons," but the affidavit contains no evidence tending to establish probable cause that Mr. Carmel committed those crimes or that evidence of the same would be located in his home.

As argued by defense counsel in Wisconsin, the heart of the probable

cause statement lies in the third paragraph, which states:

> During these phone conversations, Carmel made
> a number of statements to the UC.  Carmel invited
> the UC to his property to shoot.  The UC asked what
> types of weapons Carmel possessed.  Carmel stated
> he owned three weapons identified as a Rheinmetall
> MG3, a MG34 & a Heckler & Kock HK21.  Carmel
> stated that whatever ammunition the UC would bring,
> he would have a weapon to shoot it.  There was
> discussion about night-vision equipment.

The probable cause statement does not state that the three identified weapons

were illegal to possess.  Although the affidavit to which the probable cause

statement is attached baldly states that the weapons are machine guns, no

information is presented to justify that conclusion.  Nothing in the affidavit

establishes whether Carmel possessed semi-automatic versions of the

weapons, or provides a source of information for the conclusion that Carmel

was describing machine guns.  Without some information establishing a

basis for believing that the weapons were, in fact, machine guns, probable

cause is absent.

Even if the probable cause statement had provided a basis for

believing that the three identified weapons were machine guns, the probable

cause statement describes no facts that make it probable that the weapons

were contraband or evidence of a crime.  The warrant was issued to search

for evidence of illegal possession of a machine gun in violation of Wis. Stat. §§ 941.26(1)(a) and 941.27(1)(a) and (b). Yet § 941.27(1)(b) provides in relevant part that the prohibition of machine gun possession "shall not prohibit … the possession of a machine gun for scientific purpose, or the possession of a machine gun not usable as a weapon and possessed as a curiosity, ornament or keepsake; or the possession of a machine gun other than one adapted to use pistol cartridges for a purpose manifestly not aggressive or offensive." Nothing in the probable cause statement addresses that exception. The probable cause statement does not describe the three weapons. It provides no facts creating a fair probability that the machine gun was "usable as a weapon." It provides no facts creating a fair probability that the three described guns were possessed as anything other than curiosities, ornaments, or keepsakes. Finally and most importantly, the probable cause statement does not state that the guns were "adapted to use pistol cartridges" — if they were not, § 971.26(1)(a) does not criminalize their possession.

Federal law creates similar exceptions that permit the registration of a firearm that is "primarily a collector's item and is not likely to be used as a weapon." 27 CFR § 479.25. The probable cause statement is silent as to whether the described weapons were legally owned and registered pursuant

to federal law.  The statement therefore fails to create a fair probability, even under federal law, that the described weapons were illegal for Carmel to possess.

The fourth paragraph asserts that a search of Carmel's car produced "two top handles made for an M16 machine gun."  It does not state whether the top handles are illegal to possess, or whether they are unsuited to semi-automatic versions of an M16, like the AR-15, that are perfectly legal to possess.

All the factual assertions added together fail create a fair probability that evidence of illegal conduct would be found on Carmel's property.  All property seized during the execution of the warrant must therefore be suppressed as derivative evidence.

These arguments were all made by defense counsel in the Western District of Wisconsin, and an appeal of denial of his suppression motion is currently pending in the Seventh Circuit.


**ANALYSIS OF FEDERAL SEARCH WARRANT**

On May 31, 2007 at 4:20 PM, Magistrate Judge Stephen L. Crocker of the Western District of Michigan signed a search warrant authorizing search

of property "located at 35060 225th Avenue, Gilman, Wisconsin …

consist[ing] of an approximately 40-acre parcel of land containing a white

and green two-story wood frame house, a white single-wide trailer and

various other buildings and vehicles, including a tank."   (See Warrant's

Attachment A – PREMISES TO BE SEARCHED)

     Attachment B to the federal warrant, entitled LIST OF ITEMS TO BE

SEIZED, contained an extraordinarily broad range of items, but made no

mention of laser sites or PEQs.  The list included machine guns or machine

gun parts, silencers or component parts, books and manuals regarding

silencers and machine guns, any and all explosive devices or component

parts or literature regarding the explosive devices, any and all RPG's

(Rocket Propelled Grenades) and launchers, any and all artillery projectiles,

"any other items that appear to be military equipment available through

armed services supply depots," and "any and all documents and records,

whether hard copy of digital, related to sale, purchase, barter or manufacture

of firearms, explosives and any other military equipment" including

computer information regarding the same.

     In support of the warrant application, the Government attached the

criminal complaint against David Carmel from the Southern District of New

York and an affidavit by Liane Sellner, a Special Agent with ATF.

The application failed to provide probable cause to believe that a crime had been committed and that evidence of such crime was located at the residence.  United States v. Travisano, 724 F.2d 341, 345 (2d Cir. 1983). The information in the complaint was stale.  According to the complaint, David Carmel had not sold a PEQ to the undercover ICE agent since January 30, 2007.  Neither the complaint nor the affidavit of SA Sellner provided probable cause to believe that PEQs stolen from the Department of Defense would be found on Mr. Carmel's property approximately four months after the last sale.  The affidavit says that, during the execution of the state court warrant, SA Kai Wah Chan entered a machine shop and saw "numerous pelican cases with the markings AN/PEQ-2A as well as AN/PAQ-4C on the cases.  Based on Special Agent Chan's training and experience, these markings are known to be infrared laser-aiming devices manufactured by Insight Technology for the US Military and approved Law Enforcement agencies…" (paragraph 10 of SA Sellner's Affidavit).  The affidavit does not say that agents observed PEQs during the execution of the state court warrant.

It is not illegal to possess or sell a PEQ unless it is stolen.  Neither the complaint nor the affidavit of SA Sellner provided probable cause to believe that Mr. Carmel, either in the past or close in time to the issuance of the

19

warrant, had stolen a PEQ from the United States Department of Defense. Moreover, the Leupold rifle scope referred to in the complaint as being sold with the PEQ is not a military weapon and is not unlawful to possess.  It may be purchased on the civilian market, including at Sports Authority.

The federal warrant application was based on inaccurate representations in the federal complaint and in SA Sellner's affidavit.  For example, Mr. Carmel was never a "supply officer" on the USS Shrike, as falsely stated in paragraph 6 of the complaint.  Mr. Carmel was not "relieved of his duties as supply officer for misappropriating government property and misues of his authority," as falsely stated in paragraph 6 of the complaint. The Government should be required to produce any documentation which it relied upon in making these inaccurate assertions.

In fact, Mr. Carmel voluntarily left the USS Shrike because he had a nervous breakdown caused, in part, by a US Navy prohibition against his taking the appropriate prescription medication while aboard the ship. Ultimately, Mr. Carmel was honorably discharged from the US Navy.  The complaint falsely states that the USS Shrike "purchased" PEQs during the time that Mr. Carmel was aboard.  SA Agent Sellner's affidavit is misleading in stating, in paragraph 10, that PEQs "are not available in the civilian market."  This is contradicted by an earlier sentence in the same

paragraph that says PEQs are "manufactured by Insight Technology, INC. for the US Military and approved Law Enforcement agencies…" There is no law that prevents law enforcement agencies from disposing of or selling PEQs to other civilian agencies or civilians.

The federal warrant was issued only because of the search that was executed pursuant to the state warrant. There is no evidence that a federal warrant would have been sought if not for the observations made during the execution of the state warrant. The evidence obtained during the execution of the federal warrant must be suppressed as "the indirect fruits of an illegal search." New York v. Harris, 495 U.S. 14, 19 (1990); United States v. Trzaska, 111 F.3d 1019, 1026 (2d Cir. 1997) (where an issuing magistrate relied on tainted evidence derived from an unlawful search, the reviewing court must make an independent determination as to whether the remaining, untainted evidence supports a finding of probable cause).

At least 40 state and federal agents, using forklifts and pallets, removed truck loads of items from the Carmel residence. Many of the items were obsolete, antique, or foreign produced. The Plea Agreement in Wisconsin contained an agreement for Mr. Carmel not to contest forfeiture of illegal items, but also contained an agreement by the Government "to recommend that all property seized by the ATF or other law enforcement

21

authorities which the defendant legally possessed prior to the indictment will be returned ….”  The vast majority of the items seized were legal and are to be returned, and all of the evidence should be suppressed because the agents, in bad faith, engaged in a wide-ranging seizure outside the scope of the warrant.  United States v. Shi Yan Liu, 239 F.3d 140 (2d Cir. 2000).

Moreover, the Government failed to provide a sufficient inventory of items seized.  The paperwork is so broad and vague in its description of items as to be useless.  For example, the inventory attached to the warrant contains entries, on a page Bates stamped # 117, including:  “Misc gun parts, box of magazine, box of misc parts, box of gun parts, box of scopes, box of gun parts, box of gun parts ****.”  Nobody – not the Court, the agents, the prosecutors, Mr. Carmel, or his lawyers – can determine from this inventory what was seized.  The Court is asked to speculate as to the quantity of times encompassed by each entry and their precise nature.  Due to this intentional disregard of Rule 41 with respect to filing an inventory of property taken, the seized items should be suppressed. United States v. Burke, 517 F.2d 377, 386 (2d Cir. 1975).  Civil litigation regarding return of lawful items reached an impasse due to the vagueness of the inventory.

Upon information and belief, the truck load or more of items seized pursuant to the search warrant have not remained in the custody of law

enforcement agencies.  The Government should be required to demonstrate a

chain of custody, well in advance of trial, for any items from the Carmel

residence which is offered in evidence.


### POINT 3.  THE GOVERNMENT SHOULD BE ORDERED TO PROVIDE BRADY AND GIGLIO MATERIAL

### LEGAL STANDARD

When the government has material evidence, unknown to the

defendant, which bears on the reliability of its witnesses, due process

requires that it be disclosed. Brady v. Maryland, 373 U.S. 83 (1963); see

also United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375 (1985). In

Giglio v. United States, 405 U.S. 150, 92 S. Ct. 763 (1972), the Supreme

Court extended the Brady disclosure requirement to include evidence that

affects the credibility of the government's witnesses. Id. at 153-55. The

disclosures mandated by the Supreme Court in Brady and Giglio were

intended to ensure fundamental fairness and to prevent a miscarriage of

justice. See United States v. Agurs, 427 U.S. 97, 96 S. Ct. 2392 (1976);

Bagley, 473 U.S. at 676.  In Kyles v. Whitely, 514 U.S. 419, 433, 115 S. Ct.

1555 (1995), the Supreme Court stated that, "[i]n United States v. Bagley,

[citation omitted] the Court disavowed any difference between exculpatory

and impeachment evidence for Brady purposes . . . .” <u>See</u> <u>United States v.</u>

<u>Avellino</u>, 136 F.3d 249, 262 (2d Cir. 1998) (“Information coming within the

scope of [Brady] includes not only evidence that is exculpatory, i.e., going to

the heart of the defendant’s guilt or innocence, but also evidence that is

useful for impeachment, i.e., having the potential to alter the jury’s

assessment of the credibility of a significant prosecution witness”); <u>United</u>

<u>States v. Wong</u>, 78 F.3d 73, 79 (2d Cir. 1996); <u>United States v. Leung</u>, 40

F.3d 577, 582 (2d Cir. 1994).

The appropriate timing of <u>Brady</u> and <u>Giglio</u> disclosures is driven by

their due process rationale. The material must be disclosed in time for its

effective use at trial or at a plea proceeding. <u>Leka v. Portuondo</u>, 257 F.3d 89,

100 (2d Cir. 2001); <u>United States v. Persico</u>, 164 F.3d 796, 804 (2d Cir.

1999).  Due process requires the prosecutor to disclose exculpatory and

impeachment information “no later than the point at which a reasonable

probability will exist that the outcome would have been different if an earlier

disclosure had been made.” <u>United States v. Coppa</u>, 267 F.3d 132, 142 (2d

Cir. 2001).

## ANALYSIS:

In the instant case, the indictment alleges that the four PEQs sold to

the undercover ICE agent were the property of the Department of Defense.

There is no direct evidence of that.  On April 6, 2008, the defense requested that the Government disclose the serial number of the PEQs that are the subject of the indictment and any "paperwork that indicates how and when the United States military disposed of [the PEQs], including whether or not they were reported stolen."  The Government responded on April 11, 2008 by providing four serial numbers.  No documentation was provided with respect to whether the Department of Defense ever reported these PEQs stolen or whether they even kept track of the PEQs.

PEQs are manufactured by Insight Technologies for the United States military and for civilian law enforcement agencies.  The Government should be required to disclose how many PEQs are manufactured by Insight Technologies and how many are shipped to both the military and civilian market.  Insight Technology's website says it has supplied more than 100,000 to the Department of Defense.  The Government should be required to disclose the civilian purchasers of PEQs, including quantities and dates of shipment.  The Government should be required to disclose how the Department of Defense tracks PEQs after receiving them from Insight Technologies, whether by serial number or some other method.  The Government should be required to disclose the Department of Defense's method of disposal of PEQs when no longer in use.  The Government should

be required to disclose the dates on which the Department of Defense obtained the four PEQs in question and the dates, if ever, that the items were discarded. Such information is highly relevant because the Government has no direct evidence that David Carmel stole PEQs or that those PEQs were ever in a location where he would have had access to them. It is noteworthy that the District Court judge in the Western District of Michigan said at sentencing that it did not appear that Mr. Carmel used his position in the Navy to obtain his collection because many items were old and obsolete.

Documents provided by the Government indicate that there may be at least one cooperating witness named Scott Miller. We submit that due process requires at least 30 days for the defense to review the information and investigate the credibility of the government's witnesses. At a minimum, the Court should order the following disclosure 30 days before trial.

1. production of materials showing any prior criminal or other bad acts of any witness the Government anticipates calling in its case-in-chief, including (i) a copy of any criminal record of any such witness; (ii) a written description of any prosecutable federal offense known by the Government to have been committed by any such witness; and (iii) a written description of any conduct that may be admissible under Rule 608(b) of the Federal Rules of Evidence known by the Government to have been committed by any such witness;

2. production of materials showing a potential bias or prejudice of any witness the Government anticipates calling in its case-in-chief, including (i) a statement whether any promise, reward, or inducement has been given to any such witness, identifying by name each such

witness and each promise, reward, or inducement, and (ii) a copy of any promise, reward, or inducement reduced to writing;

3. any report prepared by the Pretrial Services Agency or the United States Probation Department in connection with any witness the Government anticipates calling in its case-in-chief should be submitted to the Court for in camera inspection in accord with the procedures set forth in United States v. Pena, 227 F.3d 23 (2d Cir. 2000) and United States v. Moore, 949 F.2d 68 (2d Cir. 1991); and

4. information known to the Government about: (i) complaints made by cooperating witnesses, (ii) reports of cooperating witnesses during investigations, (iii) adverse personnel information of agent witnesses, and (iv) any mental or physical impairment of any witnesses whom the Government anticipates calling in its case-in-chief.

5. any statements of witnesses that are inconsistent with prior statements of that witness or of another witness, which statements constitute impeachment evidence and must be disclosed.

## CONCLUSION

For the reasons stated above, the defendant requests that this Court grant the motions, together with such other relief that this Court may deem just and proper.

Dated:  May 10, 2008                              Respectfully submitted,

Donald Yannella, P.C.

/s/

By: _____
Donald Yannella, Esq.
7 Dey Street, Suite 803
New York, NY  10007
(212) 226-2883

Declaration of Service

Donald Yannella, an attorney duly admitted to practice law in the United States District Court, Southern and Eastern Districts of New York, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct:

(1)  Today, I served a copy of the attached motion upon the following individual:

AUSA Rosemary Nidiry
One St. Andrew's Plaza
New York, NY  10007
VIA ECF

Dated:  May 10, 2008

/s/

_____
Donald Yannella, Esq.