# EXHIBIT F



## U.S. DEPARTMENT OF HOMELAND SECURITY
Special Agent in Charge / New York
Office of Investigations

### STATEMENT OF RIGHTS

- Before we ask you any questions, you must understand your rights.
- You have the right to remain silent.
- Anything you say can be used against you in court.
- You have the right to talk to a lawyer for advice before we ask you any questions.
- If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
- If you decide to answer questions now, without a lawyer present, you have the right to stop answering at any time.

### WAIVER OF RIGHTS

I have read this statement of my rights and I understand what my rights are. At this time, I am willing to answer questions without a lawyer present.

Signed: _____

Witness: _____

Witness: _____

Date/Time: 5/30/07 14:42

REQUESTED BY: CHAN, KAI W

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br>REPORT OF INVESTIGATION | TECS ACCESS CODE 3 |
| --- | --- |
| | PAGE 1 |
| | CASE NUMBER ███ |

| TITLE: DAVID CARMEL |
| --- |
| CASE STATUS: INTERIM RPT |

| REPORT DATE<br>062807 | DATE ASSIGNED<br>050206 | PROGRAM CODE<br>630 | REPORT NO.<br>012 |
| --- | --- | --- | --- |

RELATED CASE NUMBERS:

COLLATERAL REQ:

TYPE OF REPORT:
  INVESTIGATIVE FINDINGS
  MEMO OF INTERVIEW

TOPIC: POST ARREST INTERVIEW OF DAVID CARMEL

SYNOPSIS:

On May 30, 2007, at approximately 1430 hours, agents from the SAC/NY and the Defense Criminal Investigative Service (DCIS) arrested David Raymond CARMEL on an arrest warrant issued out of the United States Attorney's Office for the Southern District of New York for violations of Title 18 USC 641 (Theft/Conversion of Stolen Government Property). In addition, following his arrest, a state and federal search warrant was executed for his premises. The arrest of CARMEL was the result of a joint investigation by the SAC/NY and DCIS, which led to the arrest of ███████ for violations pertaining to the Arms Export Control Act. ███ was identified as a domestic supplier of various infrared laser-aiming devices to individuals located overseas. Subsequent to ███ arrest, ███ advised agents that ███ source of supply was CARMEL.

This report contains the details of the post arrest interview of CARMEL.

| DISTRIBUTION:<br>SACNY HQTK | SIGNATURE:<br>CHAN     KAI    W    SPECIAL AGENT |
| --- | --- |
| | APPROVED:<br>HOULIHAN    DREW    F    OI GRP SUPERVISOR |
| | ORIGIN OFFICE: NY<br>NEW YORK, NY - SAC | TELEPHONE: 646 230 3200 |
| | | TYPIST: CHAN |

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

18

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 2 |
| --- | --- |
| | CASE NUMBER: ███ |
| REPORT OF INVESTIGATION CONTINUATION | REPORT NUMBER: 012 |

CASE PROGRAM CODES:

630 CUC ███

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

|  DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER |
|  | REPORT NUMBER: 012 |

DETAILS OF INVESTIGATION

On May 30, 2007, at approximately 1430 hours, agents from the SAC/NY and DCIS arrested David Raymond CARMEL during a car stop with the assistance from the Chippewa Falls Sheriff's Office (CHSO). CARMEL was arrested without incident and transported to the local sheriff's office for processing. CARMEL was arrested on an arrest warrant issued from the United States Attorney's Office for the Southern District of New York for violations of Title 18 USC 641. In attendance at the interview were ICE Special Agent (S/A) Kai Wah Chan, DCIS S/A Kenneth Siegler, Alcohol, Tobacco, and Firearms (ATF) S/A William Tonglet, and David CARMEL.

The interview commenced when agents inquired about the number of licensed machine guns that CARMEL was in possession of. CARMEL advised agents that he has one registered machine gun, which was the MG M-119 9mm submachine gun, and several firearms and rifles. CARMEL also stated that he had various night vision equipment and parts of Russian origin. When further questioned by agents regarding the amount of firearms he was in possession of, CARMEL refused to answer the questions but agreed to continue the interview with a different line of questioning

Agents then questioned CARMEL about infrared laser-aiming devices and CARMEL informed agents that he was familiar with the devices. Agents then asked CARMEL about the AN/PEQ-2A and the AN/PAQ-4C and he stated that he knew they are infrared laser-aiming devices. CARMEL stated he had about half a dozen AN/PEQ-2As at his residence some of which were demilitarized. CARMEL stated the units were purchased from Jim LNU of the Bedford Army Surplus store. In addition, CARMEL stated he had also purchased some non-functioning AN/PAQ-4Cs from the same business. CARMEL further informed agents he had sold some AN/PEQ-2As to an individual named "Tony" and other individuals for approximately $1,000 per unit.

CARMEL later advised agents that when he was stationed on the USS Shrike (Shrike), he and Glenn Burton had the authority to order materials for the ship. CARMEL informed agents the Shrike had received numerous items that he did not order. CARMEL also informed agents that there was an instance in which a large shipment of supply was awaiting him when the Shrike had returned from an exercise in San Diego. When questioned by agents about the status of the items the Shrike had received, CARMEL stated he was told to "get rid of" them. CARMEL advised he removed some of those items and placed some into the dumpster. CARMEL stated he had spoken to DAWSON about purchasing some of the items that were placed into the dumpster.

CARMEL later stated he had visited DAWSON'S RECYCLING, INC. and H + H looking for items to reuse and buy. CARMEL stated he visited DAWSON'S RECYCLING, INC.

OFFICIAL USE ONLY

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE 4 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER |
| | REPORT NUMBER: 012 |

several times to purchase materials that he thought were useful. CARMEL stated he knew the owner of the business and met with him several times. CARMEL had mentioned to people that DAWSON had some useful materials. CARMEL initially stated that DAWSON did not sell anything to him, but later advised agents he had purchased some materials from DAWSON RECYCLING, INC. In addition, CARMEL stated DAWSON kicked him off the property and threatened to call the police for trespassing.

CARMEL further informed agents he stored the materials that were purchased from DAWSON's RECYCLING, INC. and other sources, in two storage units that he rented within the Corpus Christi, Texas area. CARMEL stated he might have also kept gun parts in the storage units. Following his departure from the United States Navy, CARMEL rented a large truck to transport his materials back to his current residence at 35060 225th Ave, Gilman, Wisconsin. CARMEL informed agents that during the trip, he was involved in a motor vehicle accident in the state of Wisconsin that ended with ammunitions, barrels, and file cabinets strewn on the roadway.

During the course of the interview, CARMEL also advised agents of the following:

- He has machine gun barrels from commercial sources.
- He had been really careful not to sell United States night vision equipment overseas because of trade secrets.
- He stated that there would be no one that would say, "Carmel paid me money to remove stuff from the base."
- His father owns and operates the machine shop.
- He operates Wisconsin Militaria Depot in which he buys and sells military items.
- He resides with Beth Reid, who is his girlfriend and is approximately 50 years old.
- He purchased some materials from the recycling center at the Naval Air Station at Corpus Christi, Texas and dealt with Scott MILLER until he was fired.
- He did not grant agents consent to search his residence.

At the conclusion of the interview CARMEL was allowed a telephone call to his parents and girlfriend to advise them his situation. During the telephone conversation with his father, CARMEL stated that he was arrested and he could probably guess why.

The investigation continues.

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

REQUESTED BY:   CHAN, KAI W

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

0408                    TECS II - LIST OF RELATED RECORDS                    PAGE   1
                                                                             TN007066
                  2 RECORDS ARE RELATED TO BASE RECORD
                    ROI   CNY CHAN          K 062807

P9G11909600CNY       CARMEL        DAVID        W M 120374
   SC  SUBJECT OF CURRENT INVESTIGATION                          SUB-SOURCE

                    CASE CNY CHAN         K 050206
DAVID CARMEL

OFFICIAL USE ONLY -- TECS II INFORMATION -- OFFICIAL USE ONLY

# EXHIBIT G

AFFIDAVIT OF DEFENDANT
US v. David Carmel, 07 Cr. 537 (WHP)

DAVID CARMEL, swears that the following is true to the best of his knowledge:

1. On May 30, 2007, I was pulled over in my vehicle and arrested by local police and federal agents in Wisconsin.

2. Within 5 minutes of being arrested, while being read my Miranda rights in the back of a squad car, I invoked my right to remain silent and I asked for a lawyer. I also refused to consent to any searches of my property.

3. I was taken to a police precinct, and I was placed in a room with three federal agents. A federal agent read Miranda warnings to me. Again I asked for a lawyer and advised the agents that I was under the care of a psychiatrist and needed to take my medications, including effexor and wellbutrin.

4. The federal agents denied me access to my medication, denied me access to a lawyer, and told me I could make a telephone call only if I spoke to them.

5. The federal agents told me that the Miranda form I was signing was only an acknowledgment that I had been read my rights and that I had to sign it.

6. The federal agents then interrogated me for several hours, during which time they disregarded several more requests I made for a lawyer, for medication, and for a telephone call.

7. I swear that the preceding information is true and accurate.


Dated: May 6, 2008

/s/
_____
David Carmel

_____ swears that the following is true and accurate, to the best of his knowledge.

1. On May 30, 2007 I was pulled over in my vehicle and arrested by local police and federal agents in Wisconsin.

2. Within 5 minutes of being arrested, while being read my Miranda rights in the back of a squad car, I invoked my right to remain silent and I asked for a lawyer. I also refused to consent to any searches of my property.

3. I was taken to a police precinct, and I was placed in a room with 3 federal agents. A federal agent read Miranda warnings to me. Again I asked for a lawyer and advised the agents that I was under the care of a psychiatrist and needed to take my

medications, including effexor and wellbutrin.

4. The federal agents denied me access to my medication, denied me access to a lawyer and told me I could make a telephone call only if I spoke to them.

(5) The federal agents told me that the Miranda form I was signing was only an acknowledgment that I had been read my rights and that I had to sign it.

(6) The federal agents then interrogated me for several hours, during which time they disregarded several more requests I made for a lawyer, for medication, and for a telephone call.

(7) I swear that the preceding information is true and accurate.

May 6, 2008

X _____
David Carmel

Notary
Sworn to me this 6th
day of May, 2008

Donald J. Yannella

# EXHIBIT H

Case 1:07-cr-00537-WHP   Document 19-24   Filed 05/13/2008   Page 14 of 19

Document Number 944
Case Number 07-CR-0097-S
United States District Court
Western District of Wisconsin
Theresa M. Owens
Filed/Received
09/19/2007 12:48:17 PM CDT

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

              Plaintiff,

v.                                     ORDER

DAVID R. CARMEL,                      07-CR-097-S

              Defendant.

---

Defendant David R. Carmel was indicted on one count of unlawful possession of 60 unregistered machine guns in violation of 26 U.S.C. § 5861(d). Defendant moves to dismiss the indictment and to quash the state search warrant that led to the discovery of the charged machine guns. On September 18, 2006 defendant pled guilty to the indictment.

On September 7, 2007 the Honorable Stephen L. Crocker, United States Magistrate Judge, recommended that defendant's motions to dismiss the indictment and to suppress evidence be denied.

On September 17, 2007 defendant's counsel filed objections to the report and recommendation. Specifically, he objects to the Magistrate Judge's finding that the indictment should not be dismissed. Further, he contends that there was not probable cause for the search and that the good faith exception does not apply.

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court reviews the report and recommendation and finds as follows.

FACTS

In the June 1, 2007 criminal complaint the defendant was charged with knowingly and unlawfully possessing two machine guns in violation of 18 U.S.C. §922(o). On June 7, 2007 the grand jury returned an indictment against the defendant charging him with possessing sixty machine guns which were not registered to the defendant in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. 5861(d).

On May 30, 2007, around 7:25 p.m., Chippewa County Sheriff's Investigator Chad Holum, working with federal agents, applied to the county court for a warrant to search David Carmel's house and outbuildings in Gilman, Wisconsin (about 45 miles northeast of Eau Claire). The court issued the warrant.

Investigator Holum began his sworn affidavit by stating that he had "reason to believe" that at Carmel's property,

> There are now located and concealed certain things, to-wit:
>
> Three machine guns identified as a Rheinmetall MG3, a MG 34 & a Heckler & Kock [sic] HK21 as well as any machine gun parts or any items capable of use to modify a weapon into a machine gun.
>
> Which things may constitute evidence of a crime, to-wit: Illegal Possession of Machine Gun contrary to sec. 941.26(1)(a), & sec. 941.27(1)(a) & (b) of the Wisconsin Statutes.

See dkt. 18, Exh. 1.

He also provided the following information. Federal agents were investigating Carmel for theft, sale and diversion of stolen military supplies, including weapons. During telephone conversations with an

undercover agent (UC), Carmel had invited the UC to his property to shoot. When asked what weapons he possessed, Carmel stated that he had a Rheinmetall MG3, an MG 34, and a Heckler & Koch HK21. Carmel stated that whatever ammunition the UC brought, Carmel would have a weapon to shoot it.

At about 1:30 p.m. on May 30, 2007, federal agents arrested Carmel on federal charges. A search of his vehicle recovered "two top handles made for a M16 machine gun." According to Investigator Holum, these handles contained a portion of the functional part of an M16 machine gun; based on Holum's training and experience in the Marine Corps and in law enforcement, without this part the M16 would be unable to function unless the weapon had been altered.

During post-arrest questioning, Carmel stated that he possessed one machine gun, an "MG M-119", for which he had a license from ATF. Investigator Holum stated that when they asked Carmel about other types of machine guns, Carmel refused to answer their questions. Carmel stated that he possessed machine gun barrels that he had bought from commercial sources, and that he kept in a storage shed "pieces of tanks, bullet shells, and machines." During the interview, agents let Carmel call his father. Carmel told his father that the feds had arrested him and that his father could guess what for.

MEMORANDUM

Defendant moves to dismiss the indictment arguing that 26 U.S.C. § 5861(d) was implicitly repealed by 18 U.S.C. §922(o). 26 U.S.C. § 5861(d) prohibits possession of machine guns that are not registered in the National Firearms Registry. This is the statute which the indictment

charges defendant with violating.  On May 19, 1986, Congress enacted 18 U.S.C. § 922(o), which forbids civilian possession of any machine gun not lawfully possessed as of that date.  Therefore, as of 1986 it became impossible for ordinary citizens to register machine guns in the National Firearms Registry.

Defendant argues that it is a violation of due process to require compliance with the statute when Congress has made compliance impossible. In United States v. Jones, 976 F.2d 176, 182-183(4th Cir. 1982), the Court held that the two statutes were not irreconcilable.  The Court stated, "Simply put, Jones can comply with both acts by refusing to deal in newly made-machine guns..."  The United States Court of Appeals for the Seventh Circuit agreed with this reasoning in United States v. Ross, 9 F.3d 1182, 1193-94 (7th Cir. 1993), vacated on other grounds, 511 U.S. 1124 (1994).

The Court agrees with this reasoning and finds that defendant's due process rights were not violated by charging him with a violation of 26 U.S.C. §5861(d) because that statute survived the enactment of 18 U.S.C. §922(o).  Accordingly, the Court adopts the Magistrate's report and recommendation to deny defendant's motion to dismiss the indictment. Defendant's motion to dismiss the indictment will be denied.

Defendant also moves to quash the state search warrant and to suppress the evidence seized during the search.  Defendant contends that Investigator Holum's bare assertion that the three listed weapons were machine guns did not create probable cause to search defendant's property.

Although it would have been preferable for Investigator Holum to have provided foundational information in the body of his affidavit, his statement that the weapons are machine guns was made under oath as part of the warrant application.  Due to Holum's statement that he had expertise in firearms, this sworn statement is enough to establish that the weapons were machine guns.  The Court agrees with the Magistrate Judge's finding that Investigator Holum's affidavit was sufficient to support probable cause for the search of the defendant's residence.

Had there not been probable cause to support the search warrant the good faith doctrine would apply.  In <u>United States v. Leon</u>, 468 U.S. 897 (1984) the Court held that a search will be upheld where the officer's reliance on the warrant is objectively reasonable.  In this case the warrant application was not so lacking in indicia of probable cause as to render reliance on the warrant issued by the Court unreasonable.  <u>Id</u>. at p. 921

Inspector Holum's affidavit was not so lacking in indicia of probable cause as to render reliance on the warrant issued by the court unreasonable.  Accordingly, the Court finds that the search warrant of defendant's premises could also be upheld on good faith grounds.

The Court adopts the Magistrate Judge's report and recommendation that defendant's motion to suppress evidence be denied.  Defendant's motion to suppress evidence will be denied.

U.S. v. Carmel, 07-CR-97-S

                              ORDER

    IT IS ORDERED that the recommendation of the Magistrate Judge to deny defendant's motions to dismiss the indictment and to suppress evidence is ADOPTED.

    IT IS FURTHER ORDERED that defendant's motions to dismiss the indictment and to suppress evidence are DENIED.

    Entered this 19th day of September, 2007.

                              BY THE COURT:

                              /s/

                              _____
                              JOHN C. SHABAZ
                              District Judge